**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TERRI V. STRICKLAND-DONALD, Appellant, | DOCKET NUMBER DE-1221-15-0132-W-1 |
| v. | |
| DEPARTMENT OF THE ARMY, Agency. | DATE: December 31, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Janice L. Jackson, Leavenworth, Kansas, for the appellant.

Anne E. Hinkebein, Esquire, Fort Leavenworth, Kansas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal under the Whistleblower Protection Enhancement Act.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact;  the initial decision is based on an erroneous

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant filed an IRA appeal with the Board regarding the agency's failure to reclassify her GS-11 Audiovisual Production Specialist position in the Visual Information Support Center (VISC) at Camp Humphreys, South Korea, to the GS-12 level and promote her accordingly. Initial Appeal File (IAF), Tab 1. She requested a hearing. *Id.* at 3.

¶3 The appellant alleged that, sometime in late 2009 or early 2010, her first-line supervisor, D.M., advised her that he believed her position description needed to be updated to reflect additional duties she was performing, which merited a GS-12 classification. IAF, Tab 7 at 10, Tab 27 at 12. In May 2010, a Human Resources (HR) Specialist, D.G., in the Civilian Personnel Advisory Center (CPAC) informed D.M. that the position did not meet the requirements to be classified as a GS-12. IAF, Tab 7 at 74-75. In July 2010, the appellant provided additional information in support of the reclassification request, and D.G. later turned that information over to another HR Specialist, C.H., for further review of the classification decision. *Id.* at 76-77, 79, 83. In August 2010, C.H. advised the appellant that he agreed with D.G.'s determination that her position did not warrant classification at the GS-12 level. *Id.* at 76-77.

¶4		In September 2010, D.M. contacted another HR Specialist, J.G., again attempting to have the appellant's position description updated and her position reclassified. *Id.* at 95-96. J.G. conducted a desk audit. *See id.* at 9, 12; *see also* IAF, Tab 17 at 61.

¶5		J.G. left her position with CPAC by December 2010. IAF, Tab 1 at 23, Tab 7 at 12; *see* April 9, 2015 Hearing Transcript (April 9 HT) at 121:9-14 (testimony of J.G.). D.M. did not supervise the appellant after November 2011, and he also left Federal service in 2011. IAF, Tab 7 at 13, Tab 28 at 6; April 9 HT at 66:9 (testimony of D.M.). The appellant did not receive a promotion before D.M. and J.G. departed. IAF, Tab 27 at 15, 23. The appellant asserted, however, that J.G. approved the reclassification of her position to GS-12 on December 8, 2010, as a result of the desk audit, and theorized that D.M. subsequently "communicated somehow with the CPAC office to hold off on [her] promotion" in retaliation for her protected disclosures. IAF, Tab 7 at 8-9, 12; *see* IAF, Tab 17 at 59-60, Tab 27 at 15.

¶6		Having not received the promotion to which she believed she was entitled as a result of the purported reclassification of her position to GS-12, the appellant continued to raise the matter with various agency officials. Specifically, on March 7, 2013, she forwarded her senior rater, M.C.,[2] emails regarding the efforts in 2010 to reclassify her position and promote her. IAF, Tab 7 at 82-83, 88-96. According to the appellant, on March 11, 2013, M.C. instructed her to forward the emails to her first-level supervisor, E.J.,[3] so that E.J. could look into the issue. IAF, Tab 27 at 21. She notified E.J. of the issue on March 11 and 12, 2013, and E.J. stated that he would inquire with CPAC and let her know his findings. IAF,

---

[2] M.C. was the appellant's senior rater from February 2013 until July 2014. *Compare* IAF, Tab 11 at 2, *with* IAF, Tab 12 at 5.

[3] E.J. was the appellant's first-line supervisor from February 2013 until April 2013. IAF, Tab 44 at 10; *see* April 10, 2015 Hearing Transcript at 127:9-11 (testimony of E.J.).

Tab 18 at 104-10. The appellant alleged that also on March 12, 2013, E.J. stated that he had changed his mind and would not inquire with CPAC. IAF, Tab 27 at 21. She believes that M.C. and E.J. also obstructed the implementation of the previously-approved reclassification. IAF, Tab 11 at 5.

¶7      Effective July 13, 2014, the appellant was placed through the Priority Placement Program in the GS-9 position of Audiovisual Production Specialist at Fort Leavenworth, Kansas, with pay retention. IAF, Tab 8 at 48, 50-58. She believes that her first-line supervisor, D.C., and second-line supervisor, J.W., at Fort Leavenworth also were involved in obstructing the implementation of the previously-approved reclassification, and that their goal "was to help the management officials at [Camp Humphreys] hide [her] GS-12 promotion." *Compare* IAF, Tab 11 at 5, *with* IAF, Tab 12 at 8-9. Ultimately, the appellant never received the promotion she desired. IAF, Tab 27 at 15, 23.

¶8      The administrative judge found jurisdiction over the appellant's claim that the agency failed to reclassify her position and promote her to the GS-12 level from October 2010 to present, in retaliation for the following protected disclosures: (1) on March 2, 2011, the appellant emailed D.M. stating that two employees complained to her that an email D.M. had sent them used a "demeaning and intimidating" tone, and that she had personally experienced D.M.'s "harsh and demeaning" communication style, which "created a hostile working environment," IAF, Tab 14 at 56; (2) in March 2013, the appellant reported to the Inspector General (IG) that D.M. had abused his authority by being abusive towards employees;[4] (3) in November 2011, the appellant reported to D.M., M.C., and others, that the resource manager for Camp Humphreys was improperly diverting funds from VISC to the rest of Camp Humphreys, IAF,

---

[4] The appellant filed an equal employment opportunity (EEO) complaint in April 2011, wherein she alleged that D.M. "yelled at and demeaned" her on several occasions and that she had seen him behave similarly towards other employees. IAF, Tab 7 at 112-14. It appears that she informed the IG of these allegations by submitting a copy of her EEO complaint with her IG complaint. *Id.* at 7, 197.

Tab 7 at 125-42; (4) sometime after November 2012,[5] the appellant reported to her then first-line supervisor, the Security Operations Manager, and the Chief of Staff that two directorates were illegally meshed; and (5) in February 2013, the appellant reported to M.C., E.J., and others, that Wi-Fi equipment was illegally installed on Government computers at Camp Humphreys, IAF, Tab 7 at 189, Tab 27 at 127-28; IAF, Tab 15. The administrative judge further found that the appellant attributed retaliatory motive to D.M., E.J., M.C., D.C., and J.W. IAF, Tab 11 at 4.

¶9 After holding a 4-day hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action, finding that she failed to make a prima facie case of whistleblower reprisal. IAF, Tab 45, Initial Decision (ID). Specifically, he found that: (1) all critical agency decisions relating to the appellant's efforts to reclassify her position and receive a promotion to GS-12 occurred in 2010, before her alleged protected disclosures; (2) events occurring after 2010 to which the appellant cited were not concrete personnel actions that could form the basis of a whistleblower retaliation claim; and (3) therefore, the appellant did not establish by preponderant evidence that her disclosures were a contributing factor in any agency decision related to not promoting her to GS-12. ID.

¶10 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. She disputes that she failed to establish a prima facie case of whistleblower reprisal.[6] *Id.* She argues that the administrative judge applied an

---

[5] It is unclear exactly when the appellant made this disclosure, but it appears to have occurred in February or March 2013. IAF, Tab 14 at 26-31. The memorandum directing the allegedly illegal meshing of two directorates was issued on November 14, 2012. IAF, Tab 7 at 148.

[6] As to the administrative judge's finding that the events occurring after 2010 did not constitute concrete personnel actions, the appellant states that she was subjected to retaliation when the agency: (1) forced her to work under an incorrect position description from 2008 to 2014; (2) did not issue her a performance appraisal in 2011 or 2014; (3) did not compensate her for working overtime from 2009 through 2012;

incorrect jurisdictional standard.[7]  *Id.*  She also argues that the administrative judge erred in denying several of her witnesses, and she raises numerous arguments regarding the administrative judge's conduct of the hearing and his evaluation of various witnesses' testimony.[8]  *Id.*  The agency filed a response in opposition, to which the appellant replied.  PFR File, Tabs 4-5.

¶11  To make a prima facie case of whistleblower reprisal, an appellant must prove by preponderant evidence that she made a protected disclosure that was a contributing factor in a personnel action taken against her.  *Lu v. Department of*

---

[4] issued a memorandum in May 2011, stating that she was relieved of certain duties, IAF, Tab 7 at 116, but nonetheless continued requiring her to perform those duties; (5) removed her as the Visual Information Manager/Supervisor in November 2012, while she was out on extended leave; and (6) reassigned her from April 2013 to July 2014, and from October 2014 to present.  PFR File, Tab 1 at 21.  The appellant plainly stated below that "the sole retaliatory personnel action at issue" in this appeal is the agency's "failure to officially grade [her] as a GS-12."  IAF, Tab 14 at 6.  Thus, she is precluded from now raising additional personnel actions.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board will generally not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

[7] We find that the administrative judge relied upon, and informed the appellant of, the correct jurisdictional standard.  IAF, Tab 3, Tab 15 at 1; *see Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶¶ 4-7 (2014); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002).  The appellant's argument to the contrary is without merit.  It appears that she may be conflating the jurisdictional standard with the standard for establishing a prima facie case of whistleblower reprisal.

[8] The appellant also contends that:  (1) her position description was incorrect and the agency was required by statute to correct it; (2) the agency failed to comply with the requirement to ensure that she was working under an accurate position description; (3) because the agency failed to correct her position description, she was underpaid at the wrong grade level for several years; and (4) the HR Specialists involved in the reclassification efforts did not possess the skills needed to accurately classify her position.  PFR File, Tab 1 at 10-11, 22-23.  To the extent that the appellant is suggesting that the administrative judge erred in failing to address the merits of her arguments that her position was improperly classified and that she was entitled to a promotion, we discern no error.  In an IRA appeal, the Board lacks authority to adjudicate the merits of the underlying personnel action.  *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  Rather, its jurisdiction is limited to adjudicating the whistleblower allegations.  *Id.*

*Homeland Security*, [122 M.S.P.R.335](#), ¶ 7 (2015).  Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  [5 C.F.R. § 1201.4](#)(q).  For the following reasons, we agree with the administrative judge that the appellant failed to meet this burden.

¶12    The appellant presented no evidence that it was determined in late 2010 that her position was properly classified at the GS-12 level and, accordingly, there also is no support for her assertion that various management officials have acted over several years to thwart the processing of a reclassification that never occurred.[9]  To the contrary, the record evidence belies the appellant's assertions.  By August 2010, both D.G. and C.H. had determined that her position was correctly classified as a GS-11.  IAF, Tab 7 at 74-77.  As to the appellant's claim that J.G. approved the reclassification, the record does not contain the results of the desk audit, any document indicating that a promotion to GS-12 was requested or effected, an updated position description reflecting a GS-12 classification, or any other documentation that would support this claim.

¶13    The appellant relies on two Standard Form (SF) 50s documenting her conversion to a career-conditional appointment effective November 10, 2010,[10] which are virtually identical, except that one has an approval date of November 10, 2010, whereas the other has an approval date of December 8, 2010.  PFR File, Tab 1 at 12-13; *see* IAF, Tab 8 at 111, Tab 33 at 15.  She apparently

---

[9] In *Boughton v. Department of Agriculture*, [94 M.S.P.R. 347](#), ¶¶ 2, 8, 10-11 (2003), the Board found the appellant's assertion that the agency failed to upgrade his position following a desk audit that recommended such action constituted a nonfrivolous allegation of a personnel action.  We find *Boughton* distinguishable from the instant case because, here, there is no evidence that the desk audit resulted in a recommendation to upgrade her position to GS-12.

[10] The appellant received a Veterans' Recruitment Appointment to her Audiovisual Production Specialist position on November 10, 2008.  IAF, Tab 8 at 116.  Employees appointed under this authority must be converted to a career-conditional or career appointment after satisfactorily completing 2 years of substantially continuous service. *See* [5 C.F.R. § 307.103](#).

believes that the conversion action was approved on November 10, 2010, and that the latter SF-50 is fraudulent and was actually for her GS-12 promotion. PFR File, Tab 1 at 13-14. However, again, the record evidence belies this claim.

¶14 Neither SF-50 documents that a promotion was effected or cancelled. Data from the agency's Request for Personnel Action tracking system indicates that the agency requested a retroactive conversion action on November 28, 2010, and J.G. approved it on December 8, 2010. IAF, Tab 32 at 8-12. J.G. testified that the December 8 action was a conversion action and denied that it was for a promotion. April 9 HT at 138:16-141:5 (testimony of J.G.). Consistent with this evidence, an agency Employee Relations Specialist, M.S., testified that the agency's internal electronic personnel program maintains SF-50s bearing the actual approval date of an action but, when transferring documents electronically to an employee's Official Personnel Folder, the internal program automatically changes the approval date to the effective date if the approval date did not precede the effective date. April 10, 2015 Hearing Transcript at 45:20-47:10 (testimony of M.S.). The administrative judge found M.S. credible on this point. ID at 13; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (finding that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). In sum, we find that the appellant's speculation that one SF-50 contains fraudulent information, which is unsupported by any evidence, does not constitute preponderant evidence.

¶15 Assuming arguendo that the position was reclassified, the appellant did not allege that any of the HR Specialists involved in processing the reclassification request had any knowledge of her protected disclosures. We recognize that even if the individual responsible for the alleged personnel action does not have actual knowledge of the protected disclosure, an appellant may establish that the

protected disclosure was a contributing factor in the personnel action if she can show that an individual with actual knowledge of that disclosure influenced the individual accused of taking the retaliatory action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012). However, the appellant's unsupported speculation that D.M. "somehow" thwarted the alleged position upgrade, and that various management officials continued to cover up the upgrade for years thereafter, also does not constitute preponderant evidence.

¶16        In any event, the protected disclosures alleged in this appeal all occurred in March 2011 or thereafter.[11] Thus, the agency's failure to upgrade the appellant's position and promote her beginning in December 2010, cannot have been due to those disclosures.[12] *See Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 26 (2007) (determining that disclosures made after the personnel actions at issue cannot have been contributing factors in those personnel actions and do not support a nonfrivolous allegation that the disclosures were contributing factors in the personnel actions). Notably, following J.G.'s alleged processing of the GS-12 promotion after the desk audit, which the appellant asserts occurred on December 8, 2010, IAF, Tab 17 at 59-60, the appellant continued to be a GS-11 for nearly 3 months before the first protected disclosure alleged in this appeal.[13]

---

[11] The appellant asserts on review that her protected disclosures began in September 2010. PFR File, Tab 1 at 11-12. She asserted below that the retaliation began in October 2010. IAF, Tab 27 at 14. The administrative judge considered the pre-March 2011 disclosures, but found that the appellant did not properly exhaust them with the Office of Special Counsel. IAF, Tab 11 at 3, Tab 15 at 1-3. On review, the appellant does not identify any error with this jurisdictional finding. PFR File, Tab 1. Notably, she also failed to file any disagreement with the administrative judge's jurisdictional findings below, despite being afforded the opportunity to do so. IAF, Tab 15 at 4. We therefore discern no error.

[12] The record is unclear regarding whether any relevant agency employees were aware of the appellant's 2013 IG complaint and, if so, how and when they became aware of it.

[13] The appellant claimed that J.G. stated it would take 30 to 60 days for her promotion to GS-12 to take effect. IAF, Tab 7 at 12. If this were true, then the action should have been effective by February 8, 2011, but it never happened. Considering that the first protected disclosure at issue in this appeal did not occur until March 2011, we find that

That the agency stood firm in its decision following the appellant's protected disclosures is not evidence of whistleblower reprisal. *Cf. Dean v. Department of the Army*, 57 M.S.P.R. 296, 303 (1993) (persisting in discipline decided upon before learning of protected disclosures does not, by itself, transform the discipline into a prohibited personnel practice).

¶17 If the appellant is alleging that the agency ignored her repeated requests to reassess the classification of her position in retaliation for her protected disclosures, we find that this does not constitute a personnel action. *See Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 20 (2012) (explaining that the failure to provide a valid position description is not a personnel action); *see also Askew v. Department of the Army*, 88 M.S.P.R. 674, ¶ 24 (2001) (finding that the alleged denial of a desk audit is not a personnel action).

¶18 Based on the foregoing, we affirm the denial of the appellant's request for corrective action because she failed to make a prima facie case of whistleblower reprisal. As such, we need not reach her remaining arguments.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

---

this further belies the appellant's claim that D.M. somehow interfered with the processing of that action because of her whistleblowing activity.

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.